No. 32,075

HARRISON LAMPKIN, *Appellee*, v. THE CHICAGO GREAT WESTERN RAILROAD COMPANY, *Appellant*.

(44 P. 2d 210)

Opinion filed May 4, 1935.

*A. L. Berger,* of Kansas City, and *Walter H. Jacobs,* of Chicago, Ill., for the appellant.

*David F. Carson* and *Russell L. Stephens,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action brought by Harrison Lampkin against the Chicago Great Western Railroad Company, for the recovery of damages for unlawfully shooting him while he was upon one of defendant's trains, riding there without paying fare.

It was alleged that Arthur Sabatke, an employee of the company, whose business it was to expel from the train people who had not paid fare, fired a pistol and shot plaintiff through the right arm, just below the shoulder, and at that time Arthur Sabatke was the employee of the defendant. Judgment was for $1,500, and defendant appeals.

While it is conceded that the plaintiff was a trespasser attempting to ride the train a short distance to his home without paying fare and, in the circumstances, defendant owed the trespasser no duty

to provide a safe passage for him, it had no right to put him off the train by shooting him. Defendant could put him off the train at some suitable place but could not willfully or maliciously attack him. (*K. P. Rly. Co. v. Kessler,* 18 Kan. 523; *K. C. Ft. S. & G. Rld. Co. v. Kelly,* 36 Kan. 655, 14 Pac. 172; *A. T. & S. F. Rld. Co. v. Gants,* 38 Kan. 608, 17 Pac. 54.) There was proof that the train from which he was expelled was one of the Chicago Great Western Railroad Company; that the plaintiff was upon that train and while getting off the train he was shot by Sabatke; that Sabatke is an employee of the company who was identified as the employee who did the shooting. The plaintiff riding without paying his fare was a trespasser, but the railroad company had no right to inflict injury upon him because of his trespassing. He could be put off the train at some convenient place, but could not be wantonly assailed without subjecting the company to damages. He was not necessarily an outlaw as to his property, and still less as to his person.

There is no claim that the defendant or its agent, if they shot him, were justified. If the testimony of witnesses may be believed there was sufficient evidence that Sabatke shot him. It was a part of Sabatke's duty to clear the trains of trespassers, and it seems he took an unjustifiable method of doing it. An effort was made to show that he was not on the train and therefore could not have done the shooting. He stated that he was not on the train and never shot the plaintiff, that he had not used pistols, but on cross-examination it was developed that he had had trouble in that section of the yard, and that he had a pistol, and that he had used it on a number of occasions. The demurrer was rightly refused.

There is a contention of the appellant that the court erred in admission of testimony offered by the appellee and the refusal to admit competent evidence offered by the appellant. A witness, Mr. Mosher, was called by the plaintiff to testify. He was asked several questions of a formal character which included reference to the taking of testimony by Mosher in this case. That he, himself, was assistant claim agent and that he knew Arthur Sabatke. Mosher was asked a few questions identifying himself with the railroad company as a special agent, and stated that he came there to take the testimony of Roy Jones, Stephen Jones and F. L. Stanford; that he also took the statement of Lampkin, and that he knew Arthur Sabatke. Counsel for the railroad company sought to extend the cross-examination into the matter of who was present when the statement was

taken, and an objection was sustained. Appellant claims that it was denied an opportunity to cross-examine Mosher. The questions asked Mosher would hardly admit of a wide range of questions as to who else was present and other matters affecting the case. The questions asked were not very important and really were not competent.

Misconduct of counsel was alleged and plaintiff was permitted to ask whether Sabatke was in court where he could get hold of him. Attention is called to a statement made by counsel as misconduct when a witness named Johnson was being examined. Mr. Carson said:

"Wait till I object, Mr. Berger. It appears to be now the—an offer of testimony of the interior procedure of this company; not required by any law or statute to be made by them; and, therefore, it is in the same category as if I write letters to myself.

MR. BERGER: "Well, a letter or what he wrote March first would be pretty good proof what he did. This is the rule of the company.

MR. CARSON: "Well, if this happened, the account could be all made up. And if a man can write letters to himself—

MR. BERGER: "We object to that as an insinuation that we are making evidence.

MR. CARSON: "I didn't say anything of the kind. I said it is possible for it to be made up that way.

THE COURT: "Lots of things are possible.

MR. CARSON: "I object to it for the reason—

THE COURT (interrupting): "The question was raised whether or not it is an original.

MR. CARSON: "I also object to it for the reason it is a self-serving declaration.

THE COURT: "I know.

"Q. Is this the original that was sent to you? A. Yes, sir."

There is not much in the claim that Mr. Carson was guilty of misconduct in the statement that the defendant was making evidence. The court overruled the objection and admitted the testimony. There was no prejudice to permit counsel to ask if Sabatke would be present and where he could be had, as counsel had agreed that Sabatke would be present.

The next complaint is that the court's instructions given on its own motion were prejudicial error, and the refusal to give the instructions requested was a continuation of the error. If the instructions about which appellant complains—one of which was prepared and presented by the appellant itself—were error appellant

is barred by the fact that he attempted to lead the court into that error and cannot now complain.

There is nothing to show that the principles of law in the requested instructions were not given in the general charge of the court. It is incumbent on a party showing that a requested instruction had been refused, to make it appear that an instruction was not given on the subject. If all the record does not disclose that the requested instructions were not given by the court, the point is not available.

We find no material error in the record, and therefore the judgment is affirmed.